IN THE UNITED STATES DISTRICT COURT
                   FOR THE WESTERN DISTRICT OF OKLAHOMA

LARRY STOVER

    Plaintiff,

v.                                                              Case No. _____

1. THE BOARD OF COUNTY
   COMMISSIONERS OF LINCOLN
   COUNTY, OKLAHOMA, and
2. KEVIN GARRETT, as an individual,

    Defendants.

## **COMPLAINT**

Plaintiff, by and through undersigned counsel, alleges the following for his Complaint against Defendant Board of County Commissioners of Lincoln County, Oklahoma (here the "Defendant County"), and Defendant Kevin Garrett in his individual capacity (herein "Defendant Garrett")

### I. PARTIES

1. Plaintiff, Larry Stover, is a resident of Lincoln County, Oklahoma, and was previously employed by Defendant County.

2. Defendant County is a governmental subdivision which is sued in the name of the Board of County Commissioners of Lincoln County.

3. Defendant Garrett is a resident of Lincoln County, Oklahoma, and currently serves as the Sherriff for Lincoln County, Oklahoma.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff asserts claims under the First Amendment and the Age Discrimination in Employment Act (ADEA) which are made actionable under 42 U.S.C. §1983 and 29 U.S.C. § 621-63.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the events giving rise to this claim occurred within Lincoln County, Oklahoma which is located in the Western District of Oklahoma.

## III. ADMINISTRATIVE EXHAUSTION

6. Plaintiff has exhausted all administrative remedies as required by applicable law.

7. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission (herein the "EEOC"). Plaintiff received a Notice of Right to Sue from the EEOC and files this Complaint within 90 days thereof.

8. There is no exhaustion of administrative remedies for Plaintiff's claims asserted under 42 U.S.C. §1983.

## IV. FACTUAL ALLEGATIONS

9. Plaintiff was an employee of the Lincoln County Sheriff's Department from approximately November 2006 until his termination on January 2, 2025.

10. During Plaintiff's employment with Defendant County, Plaintiff served as a Deputy Sherrif and as Captain of Investigations.

11. Plaintiff served as Captain of Investigations from approximately 2017 through his termination on January 2, 2025.

12. As Captain of Investigations, Plaintiff consistently received positive end-of-year reviews.

13. In December of 2024, Plaintiff received the award of Lifetime Achievement for Outstanding Duty for his performance and dedication as Captain of Investigations.

14. As Captain of Investigations, Plaintiff did not receive any written reprimand regarding performance or conduct.

15. In 2024, Plaintiff ran for election as Sheriff of Lincoln County.

16. In that same election, Defendant Garrett also ran for Sheriff of Lincoln County.

17. Both Plaintiff and Defendant Garrett ran for Sheriff as Republicans in the Republican Primary for Lincoln County Sherriff (the "Primary").

18. Defendant Garrett and Mr. Aaron Bennett finished in first and second place in the Primary and were only separated by approximately four (4) votes.

19. Accordingly, the Republican Primary election resulted in a runoff election on or about August 27, 2024 between Defendant Garrett and Mr. Aaron Bennett (herein the "Runoff").

20. Following the Primary, Defendant Garrett contacted Plaintiff and requested that he publicly endorse Defendant Garrett in the Runoff.

21. Plaintiff declined to endorse Defendant Garrett and stated that he preferred to remain neutral.

22. Defendant Garrett ultimately won the Runoff and overall election.

23. Defendant Garrett's first day as acting Sheriff for Lincoln County was January 2, 2025.

24. On January 2, 2025, the first day in which Defendant Garrett assumed the position of Sheriff of Lincoln County, Defendant Garrett called Plaintiff into the Sheriff's Office for an in-person meeting (herein the "Termination Meeting").

25. Plaintiff, Defendant Garrett, Ted Woodhead, and Melony McFee attended the Termination Meeting.

26. At the Termination Meeting, Defendant Garrett told Plaintiff it was time for Plaintiff to retire.

27. At the Termination Meeting, Defendant Garrett informed Plaintiff that if he did not retire it would negatively impact his retirement.

28. At the Termination Meeting, when Plaintiff refused to retire, Defendant Garrett informed Plaintiff that Plaintiff's position of Captain of Investigation was being eliminated.

29. At the Termination Meeting, when Plaintiff was informed that the position of Captain of Investigations was being eliminated, Plaintiff requested to stay employed with Defendant County as an investigator in the Sheriff's Office. In response, Defendant Garrett verbally informed Plaintiff that no such position would be available for Plaintiff and that he could either retire or be terminated.

30. When Plaintiff still refused to retire, Defendant Garrett terminated Plaintiff's employment effectively immediately.

31. Defendants provided Plaintiff a termination letter that provided, in relevant part, that "Due to restructuring in the Lincoln County Sheriff's Office we are eliminating your position."

32. Defendants' stated reasoning for termination is pretextual.

33. Immediately prior to Plaintiff's termination, the following individuals were employed in investigations: Larry Stover, Kelly Coleman, and Richard Harwell (Mr. Harwell worked as a part-time investigator).

34. On information and belief, shortly after Plaintiff's termination, Defendants hired additional employees in the investigations division to work as investigators.

35. On information and belief, shortly after Plaintiff's termination, the investigation division actually grew in size and the following individuals were employed to work in investigations: Kelly Coleman, Tyler Ogdon, J.D. English, Carl Monk, and Bryan Ackerman.

36. Plaintiff could have filled one of the new investigator positions.

37. On information and belief, Tyler Ogdon and J.D. English are substantially younger than Plaintiff.

38. On information and belief, Tyler Ogdon and J.D. English made public statements supporting Defendant Garrett. And, on information and belief, Carl Munk and Bryan Ackerman had prior close relationships with Defendant Garret and likely supported and/or endorsed Defendant Garrett in his election.

39. On information and belief, of Tyler Ogdon, J.D. English, Carl Munk, Bryan Ackerman, and Plaintiff, Plaintiff is the only individual who refused to endorse Defendant Garrett after Defendant Garrett requested an endorsement.

40. On information and belief, neither Tyler Ogdon, J.D. English, Carl Munk, nor Bryan Ackerman ran for Sheriff of Lincoln County.

41. On information and belief, Captain James Jackson of the Lincoln County Sheriff's Department openly endorsed and supported Defendant Garret during the election and began working closely with Defendant Garrett in the months leading up to Defendant Garrett assuming the role of Sheriff.

42. After the election, and prior to Defendant Garret assuming the role of Sheriff of Lincoln County, Mr. Jackson informed multiple individuals who did not support Defendant Garrett during the election that Defendant Garrett would be eliminating their positions once Defendant Garrett became Sheriff of Lincoln County.

43. On information and belief, shortly after Defendant Garrett became Sheriff, Mr. Jackson received a favorable transfer and favorable privileges with the Lincoln County Sheriff's Department. This is true despite Mr. Jackson having performance issues prior to Defendant Garrett becoming Sheriff.

44. Chad Povlocheck was a Captain with the Lincoln County Sheriff's Department who ran against Defendant Garrett during the primary. After the primary, and during the runoff, Mr. Povolocheck openly supported and endorsed Defendant Garrett. After the runoff, Mr. Povlocheck began working closely with Defendant Garrett in the months leading up to Defendant Garrett assuming the role of Sheriff.

45. On information and belief, shortly after Defendant Garrett became Sheriff, Mr. Povlocheck received a favorable transfer and favorable privileges with the Lincoln County Sheriff's Department. This is true despite Mr. Povlocheck having performance issues prior to Defendant Garrett becoming Sheriff.

46. Aaron Bennett ran against Defendant Garrett during the Primary and the Runoff. At the time of the election, Mr. Bennett worked as a School Resource Office at Chandler Public Schools as a Deputy of the Lincoln County Sheriff's Department.

47. On information and belief, after the runoff, Mr. Bennett resigned from the Lincoln County Sheriff's department out of fear of retaliation via, *inter* alia, termination of his employment.

48. Deputy Chapa, who served as a School Resource Officer for Wellston Public Schools, and the anticipated undersheriff for Mr. Bennet had Mr. Bennet won the election, refused to endorse Defendant Garrett during the primary and/or runoff.

49. On information and belief, after Defendant Garrett won the runoff election, Deputy Chapa was informed that he was going to be terminated.

50. Jim Hampton, who also ran against Defendant Garrett during the primary, was not an employee of Lincoln County Sherriff's Department.

51. On information and belief, all employees of Lincoln County Sheriff's office who ran for election and did not publicly endorse or support Defendant Garret after the Primary were either terminated by Defendant Garrett or resigned out of fear of retaliation by Defendant Garrett.

52. On information and belief, all officers of Lincoln County Sheriff's office who ran for election and did publicly endorse or support Defendant Garret were not terminated and, after Defendant Garret became Sheriff, received favorable transfers and/or employment privileges.

53. After Defendant Garrett won the election for Sheriff, Plaintiff, and other employees of the Lincoln County Sheriff's department, were required to sign a certain agreement titled "Lincoln County Sheriff Office Non-Disclosure Agreement" (herein the "NDA"). Per said NDA, Defendant County required all employees to promise they would not disclose "all information regarding the ways, means, and general operations of the Lincoln County Sheriff Office."

54. The only stated exceptions in the NDA regarding said prohibited disclosures applied to "Federal and state whistleblower acts" and the "dissemination of information to courts, District attorneys, Judges and or administrative authorities."

55. On information and belief, Defendant Garrett directed the Human Resources office for Defendant County to require Plaintiff and other employees to sign the NDA.

56. Plaintiff and other employees were informed that if they did not sign the NDA they would be terminated.

57. Following Plaintiff's termination, Defendants have provided shifting reasons for Plaintiff's termination. At the Termination Meeting, Plaintiff was informed that he was being terminated because his position was being eliminated. Following the Termination Meeting, Defendants have claimed that Plaintiff was terminated for performance issues and specifically identified performance issues from 2007 and 2011.

58. On information and belief, no other employee was terminated by Defendant Garrett because of alleged performance issues that occurred over a decade prior to their termination.

59. On information and belief, Mr. Jackson and Mr. Povlocheck, who supported Defendant Garrett for Sheriff, actually received favorable treatment and promotion despite alleged performance concerns.

60. Defendant Garrett terminated Plaintiff on the first day in which Defendant Garrett assumed the position of Sheriff of Lincoln County.

61. Defendant Garrett never provided Plaintiff an opportunity to respond to any of the alleged performance issues prior to the termination. On information and belief, this is in contradiction to standard and routine practices and policies at Defendant County.

62. Defendants' terminated Plaintiff because of his age and because Plaintiff refused to publicly endorse Defendant Garrett in the political election in violation of Plaintiff's First Amendment rights.

### V. FIRST CAUSE OF ACTION
**(Retaliation for Protected Speech in Violation of 42 U.S.C. § 1983)**
**Against Defendants County and Garrett**

63. Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

64. Plaintiff engaged in protected activity by informing Defendant Garrett that Plaintiff would not endorse him in the election. Said protected activity is guaranteed under the First Amendment of the United State Constitution.

65. At the time of Plaintiff's termination, it was clearly established in the Tenth Circuit that retaliating against an employee for failing to endorse a candidate is a violation of the First Amendment. *See e.g., Gann v. Cline*, 519 F.3d 1090 (10th Cir. 2008); *Snyder v. City of Moab*, 354 F.3d 1179 (10th Cir. 2003); *Bass v. Richards*, 308 F.3d 1081 (10th Cir. 2002).

66. Plaintiff's job duties did not require Plaintiff to offer political endorsements.

67. The Sheriff of Lincoln County is an elected position, and Plaintiff's choice to endorse or not endorse a candidate for a political office is a matter of public concern.

68. The government has no legitimate interest in compelling political speech from an employee, and such speech, or lack thereof, does not in any way hinder Plaintiff's job performance or the performance of other members of the Sheriff's Office.

69. Defendant Garrett and Defendant County retaliated against Plaintiff in response to his protected activity, causing Plaintiff to suffer a materially adverse action, including Plaintiff's termination.

70. Defendant Garrett terminated Plaintiff on the first day in which Defendant Garrett took office after Plaintiff's refusal to endorse Defendant Garrett.

71. Defendant Garrett terminated Plaintiff because of Plaintiff's refusal to endorse Defendant Garrett in the Primary and/or subsequent runoff.

72. Defendants' conduct constitutes unlawful and intentional retaliation in violation of, *inter alia*, 42 U.S.C. § 1983.

73. Plaintiff suffered damages and is seeking damages from Defendant County including emotional distress, reputational harm, back pay, front pay, and other consequential and compensatory damages to the maximum extent allowed by law.

74. Plaintiff suffered damages and is seeking damages from Defendant Garrett including emotional distress, reputational harm, back pay, front pay, punitive damages, and other consequential and compensatory damages to the maximum extent allowed by law.

## VI. SECOND CAUSE OF ACTION
### (Retaliation for Political Affiliation in Violation of 42 U.S.C. § 1983)
### Against Defendants County and Garrett

75. Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

76. Plaintiff's position does not require political affiliation.

77. Plaintiff's refusal to endorse Defendant Garrett in the 2024 Lincoln County Sheriff's race constitutes political affiliation. Said protected activity is guaranteed under the First Amendment of the United State Constitution.

78. At the time of Plaintiff's termination, it was clearly established in the Tenth Circuit that retaliating against an employee for failing to endorse a candidate is a violation of the First Amendment. At the time of Plaintiff's termination, it was clearly established in the Tenth Circuit that retaliating against an employee for failing to endorse a candidate is a violation of the First Amendment. *See e.g., Gann v. Cline*, 519 F.3d 1090 (10th Cir. 2008); *Snyder v. City of Moab*, 354 F.3d 1179 (10th Cir. 2003); *Bass v. Richards*, 308 F.3d 1081 (10th Cir. 2002).

79. In response to Plaintiff's protected activity of refusing to endorse Defendant Garrett, Defendant Garrett fired Plaintiff the first day Defendant Garrett took office.

80. Because of Plaintiff's refusal to endorse Defendant Garrett in the Primary and/or subsequent Runoff, Defendant Garrett terminated Plaintiff.

81. Defendant's conduct constitutes unlawful retaliation in violation of, *inter alia*, 42 U.S.C. § 1983.

82. Plaintiff suffered damages and is seeking damages from Defendant County including emotional distress, reputational harm, back pay, front pay, and other consequential and compensatory damages to the maximum extent allowed by law.

83. Plaintiff suffered damages and is seeking damages from Defendant Garrett including emotional distress, reputational harm, back pay, front pay, punitive damages, and other consequential and compensatory damages to the maximum extent allowed by law.

### VII. THIRD CAUSE OF ACTION
### (Discrimination in Violation of the ADEA)
### Against Defendant County

84. Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

85. Plaintiff was 59 years old at the time of his termination from the Sheriff's Office.

86. Plaintiff was informed that it was 'time for him to retire,' and after his refusal, Defendant fired Plaintiff.

87. Defendant Garrett's comment that it was time for him to retire was a direct reference to Plaintiff's age.

88. Defendant attempted to force Plaintiff to retire in lieu of termination because of Plaintiff's age.

89. Plaintiff suffered damages and is seeking damages from Defendant County including back pay, front pay, liquidated, and other consequential and compensatory damages to the maximum extent allowed by law.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff is seeking damages exceeding $75,000.00 and respectfully requests that this Court:

a. Enter judgment in his favor Cand against Defendants;

b. Award Plaintiff back pay, front pay, and liquidated damages to the maximum extent allowed by law.

c. Award compensatory damages for emotional distress, loss of reputation, and other compensatory damages to the maximum extent allowed by law;

d. Award punitive damages to the maximum extent permitted by law;

e. Award attorneys' fees and costs to Plaintiff;

f. Grant such other and further relief as the Court deems just and proper.

*/s/* Isaac Treadaway
Isaac Treadaway, OBA #35345
Christopher Lind, OBA #31402
LIND TREADAWAY, PLLC
108 N. Second Avenue
Purcell, Oklahoma 73080
Telephone (405) 442-0483
isaac@lindtreadaway.com
chris@lindtreadaway.com

and

Hung-Lin Lai, OBA #35304
Shade C. Kremer, OBA #35157
Lai & Turner Law Firm PLLC
2000 N Classen Blvd., STE N50
Oklahoma City, OK 73106
Telephone: (405) 665-8866
Facsimile: (405) 724-9170
Jimmy@laiturnerlaw.com
Shade@laiturnerlaw.com
**ATTORNEYS FOR PLAINTIFF**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**