# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LARRY STOVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CV-25-1017-HE |
| | ) | |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF LINCOLN | ) | |
| COUNTY, OKLAHOMA, and | ) | |
| KEVIN GARRETT, as an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO DISMISS AND BRIEF IN SUPPORT OF DEFENDANT BOARD OF COUNTY COMMISSIONERS OF LINCOLN COUNTY

Robert S. Lafferrandre, OBA No. 11897
Jessica L. Dark, OBA No. 31236
W. Riley Nester, OBA No. 36222
PIERCE COUCH HENDRICKSON
 BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile:  (405) 235-2904
rlafferrandre@piercecouch.com
jdark@piercecouch.com
rnester@piercecouch.com
***Attorneys for Defendants Board of
County Commissioners of Lincoln
County and Sheriff Kevin Garrett***

**October 13, 2025**

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ..................................................................................................... 2

STANDARD OF REVIEW ......................................................................................... 3

ARGUMENTS AND AUTHORITIES .......................................................................... 4

    I.      PLAINTIFF FAILS TO STATE A FIRST AMENDMENT
          RETALIATION CLAIM UPON WHICH RELIEF MAY
          BE GRANTED ................................................................................... 4

          A. Plaintiff fails to allege an underlying constitutional
             Violation because he fails to show substantial motivation ........ 6

          B. In the alternative, Plaintiff fails to allege an underlying
             constitutional violation because the Sheriff may
             lawfully consider political affiliation for the position
             at issue ....................................................................................... 10

          C. Plaintiff fails to identify a policy or custom of the
             County by which he was denied a constitutional right ............ 13

    II.     PLAINTIFF FAILS TO STATE A CLAIM OF ADEA
          DISCRIMINATION UPON WHICH RELIEF MAY BE
          GRANTED ..................................................................................... 16

CONCLUSION ......................................................................................................... 19

CERTIFICATE OF SERVICE .................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)............................................ 3, 8

*Barney v. Pulsipher*,
   143 F.3d 1299 (10th Cir. 1998) ..................................................................................... 14

*Bass v. Richards*,
   308 F.3d 1081 (10th Cir. 2002) ....................................................................................... 9

*Bd. of Cty. Comm'rs. of Bryan Cty. v. Brown*,
   520 US 397 (1997)...................................................................................................... 6, 13

*Beaird v. Seagate Tech., Inc.*,
   145 F.3d 1159 (10th Cir. 1998) ....................................................................... 17, 18, 19

*Becker v. Kroll*,
   494 F.3d 904 (10th Cir. 2007) ......................................................................................... 7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................. 3, 8, 10

*Brammer-Hoelter v. Twin Peaks Charter Acad.*,
   602 F.3d 1175 (10th Cir. 2010) ..................................................................................... 13

*Branti v. Finkel*,
   445 U.S. 507 (1980)....................................................................................................... 11

*Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek*,
   312 F.3d 1213 (10th Cir. 2002) ..................................................................................... 16

*Brooks v. Mentor Worldwide LLC*,
   985 F.3d 1272 (10th Cir. 2021) ....................................................................................... 4

*Bryson v. City of Okla. City*,
   627 F.3d 784 (10th Cir. 2010) .......................................................................... 5, 6, 13, 15

*Burke v. Regalado*,
   935 F.3d 960 (10th Cir. 2019) ....................................................................................... 14

*City of Canton v. Harris*,
   489 U.S. 378 (1989)..................................................................................................... 5, 6

*City of Los Angeles v. Heller*,
   475 U.S. 796 (1986)......................................................................................................... 5

*City of St. Louis v. Praprotnik*,
   485 U.S. 112, 108 S. Ct. 915, 99 L. Ed. 2d. 107 (1988)................................................ 13

*City of St. Louis v. Praprotnik*,
   486 U.S. 117 (1988)....................................................................................................... 15

*Connick v. Myers*,
   461 U.S. 138 (1983)....................................................................................................... 11

*Cory v. Allstate Ins.*,
   583 F.3d 1240 (10th Cir. 2009) ....................................................................................... 4

*Elrod v. Burns*,
  427 U.S. 347 (1976)..............................................................................................................11
*Escobar v. Mora*,
  496 Fed. App'x. 806 (10th Cir. 2012) .............................................................................4
*Frey v. Town of Jackson, Wyoming*,
  41 F.4th 1223 (10th Cir. 2022) ........................................................................................4
*Furr v. Seagate Tech., Inc.*,
  82 F.3d 980 (10th Cir. 1996) ..........................................................................................18
*Gann v. Cline*,
  519 F.3d 1090 (10th Cir. 2008) ...................................................................................9, 10
*Garrett v. Hewlett-Packard Co.*,
  305 F.3d 1210 (10th Cir. 2002) ......................................................................................19
*Hartman v. Moore*,
  547 U.S. 250 (2006)............................................................................................................7
*Jantzen v. Hawkins*,
  188 F.3d 1247 (10th Cir. 1999) ................................................................................11, 12
*Khalik v. United Air Lines*,
  671 F.3d 1188 (10th Cir. 2012) ........................................................................................4
*Lopez v. LeMaster*,
  172 F.3d 756 (10th Cir. 1999) ........................................................................................14
*McMillian v. Monroe Cnty.*,
  520 U.S. 781 (1997)..........................................................................................................13
*Monell v. Dep't of Soc. Servs. of N.Y.*,
  436 U.S. 658 (1978).......................................................................................................5, 6
*Nieves v. Bartlett*,
  587 U.S. 391 (2019)........................................................................................................7, 8
*Pickering v. Bd. of Educ.*,
  391 U.S. 563 (1968)..........................................................................................................11
*Pippin v. Burlington Res. Oil & Gas Co.*,
  440 F.3d 1186 (10th Cir. 2006) ......................................................................................18
*Randle v. City of Aurora*,
  69 F.3d 441 (10th Cir. 1996) ..........................................................................................15
*Rivera v. City and Cnty. of Denver*,
  365 F.3d 912 (10th Cir. 2004) ........................................................................................17
*Schneider v. City of Grand Junction Police Dept.*,
  717 F.3d 760 (10th Cir. 2013) ..........................................................................................5
*Seifert v. Unified Gov't of Wyandotte County/Kansas City*,
  779 F.3d 1141 (10th Cir. 2015) ........................................................................................5
*Sexton v. City of Colo. Springs*,
  530 F.Supp.3d 1044 (D. Colo. 2021)................................................................................7
*Snyder v. City of Moab*,
  354 F.3d 1179 (10th Cir. 2003) ........................................................................................9
*Winters v. Bd. of Cnty. Comm'rs of Muskogee Cnty.*,
  633 Fed.Appx. 684 (10th Cir. 2015)...............................................................................16

## Statutes

42 U.S.C. § 1983 ............................................................................................................. 3, 5

## Rules

Fed. R. Civ. P. 8............................................................................................................... 3
Fed. R. Civ. P. 12(b)(6) ................................................................................................. 2, 20

## BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant Board of County Commissioners of Lincoln County (the "County"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby submits the following Motion to Dismiss Plaintiff's Complaint (Doc. No. 1) for failure to state a claim upon which relief may be granted. In support hereof, the County submits the following brief in support:

## INTRODUCTION

This case arises out of Plaintiff Larry Stover's employment and separation from the Lincoln County Sheriff's Department. (Doc. No. 1, ¶ 9). Per the Complaint, Plaintiff served as the Captain of Investigations from 2017, to January 2, 2025. (Doc. No. 1, ¶ 11). Both Plaintiff and Defendant Garrett, *inter alia,* ran in the Republican Primary for the 2024 Lincoln County Sheriff's election. (Doc. No. 1, ¶¶ 17). The Republican Primary required a runoff election; Defendant Garrett was a candidate in the runoff and Plaintiff was not. (Doc. No. 1, ¶ 19). Plaintiff alleges that Defendant Garrett contacted him and requested that he endorse Defendant Garrett in the runoff election and Plaintiff declined. (Doc. No. 1, ¶¶ 20-21). Defendant Garrett won the election. On January 2, 2025, Plaintiff was called into a meeting with Defendant Garrett, Ted Woodhead, and Melanie McFee. (Doc. No. 1, ¶¶ 24-25). In that meeting, "Defendant Garrett informed Plaintiff that Plaintiff's position of Captain of Investigation[s] was being eliminated." (Doc. No. 1, ¶ 28). Plaintiff was given a termination letter, which provided that "[d]ue to restructuring in the Lincoln County Sheriff's Office we are eliminating your position." (Doc. No. 1, ¶ 31). The Captain of Investigations position's responsibilities were re-distributed among other pre-existing

Investigations employees in different roles. (Doc. No. 1, ¶¶ 34-36). Plaintiff alleges that two of the five individuals he identified as being "employed to work in investigations[,]" (Doc. No. 1, ¶ 35), "are substantially younger than Plaintiff." (Doc. No. 1, ¶ 37).

Based on the foregoing, Plaintiff brings a 42 U.S.C. § 1983 claim against the County alleging retaliation in violation of his First Amendment rights to protected speech and political affiliation. (Doc. No. 1, ¶¶ 63-83). Plaintiff also brings a claim under the Age Discrimination in Employment Act ("ADEA"), claiming that he was discriminated against because of his age (59 years old). (Doc. No. 1, ¶ 84-89). However, these claims fail against the County, as the Complaint does not state facts to demonstrate an underlying constitutional violation, fails to identify a policy or custom of the County by which he was denied a constitutional right, and fails to demonstrate that age was any sort of determining factor in the elimination of the Captain of Investigations position. As discussed herein, the Complaint should be dismissed as a matter of law.

## STANDARD OF REVIEW

The *Twombly/Iqbal* pleading standard is well-known by this Court. A complaint must present a facially plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The quality of these factual allegations must create more than speculation about the plaintiff's chances of recovery. *Id*. The United States Supreme Court has further held that, while the pleading standard of Fed. R. Civ. P. 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868

3

(2009). If the complaint contains only boilerplate labels and conclusory allegations, dismissal is proper because "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Escobar v. Mora*, 496 Fed. App'x. 806, 816 (10th Cir. 2012) (citing *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009)). "An allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement. Conclusory allegations are **not entitled to the assumption of truth.**" *Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1233 (10th Cir. 2022) (citing *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)) (emphasis added).

As discussed herein and as evidenced from the face of the pleading, Plaintiff's Complaint fails to meet the standards of pleading required under *Twombly* and *Iqbal* as it lacks the specific factual allegations necessary to support a plausible claim for relief against the County, which is sued through the name of the Board of County Commissioners.

## ARGUMENTS AND AUTHORITIES

### I. PLAINTIFF FAILS TO STATE A FIRST AMENDMENT RETALIATION CLAIM UPON WHICH RELIEF MAY BE GRANTED.

As an initial matter, Plaintiff effectively pleads his First Amendment theory twice—once as a retaliation for "engag[ing] in protected activity by informing Defendant Garrett that Plaintiff would not endorse him[,]" (Doc. No. 1, ¶ 64), and again as a retaliation for Plaintiff's "refusal to endorse Defendant Garrett in the 2024 Lincoln County Sheriff's race[,]" (Doc. No. 1, ¶ 77). These are not distinct claims. Both rest on the same nucleus of facts, invoke the same legal elements for public-employee retaliation, and cite identical

4

"clearly established" authority. (*see* Doc. No. 1, ¶¶ 65, 78). Whether framed as the act (non-endorsement), or the communication of that act (informing Sheriff Garrett), the analysis is the same: Plaintiff must plausibly allege protected activity, an adverse action, and that the action was substantially motivated by the activity (with but-for causation). *See infra.* Accordingly, the arguments below address and seek dismissal of both iterations.

It is well established that a County cannot be held liable for any constitutional violations of its agents or employees under a theory of *respondeat superior. Seifert v. Unified Gov't of Wyandotte County/Kansas City*, 779 F.3d 1141, 1159 (10th Cir. 2015); *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978). The County can be liable under 42 U.S.C. § 1983 only for *its own* actions. Under this standard, the County may be held liable only for (1) actions taken by County employees acting pursuant to an official policy or custom, or (2) for the actions of a final policymaker for the County, such that the conduct may be viewed as the "official policy" of the County. *Id.*; *See also Monell*, 436 U.S. 658 (1978); *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 769-70 (10th Cir. 2013); *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010).

Thus, to state a claim against the County under § 1983 for alleged acts or omissions by its agents or employees, Plaintiff must establish the existence of a County policy or custom by which he was denied a constitutional right. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 694; *Bryson*, 627 F.3d at 788. For liability to attach to the County under *Monell*, there must first be an underlying constitutional violation by a County agent or employee. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)

(no *Monell* liability where plaintiff fails to demonstrate underlying constitutional violation by municipal actor).

Plaintiff must also demonstrate a "direct causal link between [that] […] municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 US 378, 385 (1989); *Monell*, 436 U.S. 658, 694 (1978); *Bryson*, 627 F.3d 784, 788 (10th Cir. 2010). "Locating a 'policy' insures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cty. Comm'rs. of Bryan Cty. v. Brown*, 520 US 397, 403-04 (1997). Additionally, *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, requires "rigorous standards of culpability and causation" in instances where a municipality is only indirectly implicated in criminal or tortious behavior of its employees. *Id.* at 405. "A showing of simple or even heightened negligence will not suffice." *Id.* at 407. To establish municipal liability, a plaintiff must demonstrate that a municipal action was taken with deliberate indifference as to its known or obvious consequences. *Id.* at 407.

## A. Plaintiff fails to allege an underlying constitutional violation because he fails to show substantial motivation.

The Complaint alleges that the County retaliated against Plaintiff for engaging in the protected activity of informing Defendant Sheriff Garrett that he would not endorse him in the 2024 Lincoln County Sheriff's election. (Doc. No. 1, ¶ 69). In order for Plaintiff to establish a First Amendment retaliation claim, he must demonstrate:

(1) that he was engaged in a constitutionally protected activity; (2) that the defendant's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and, (3) that the

> defendant's action was **substantially motivated** as a response to his exercise
> of his First Amendment speech rights.

*Sexton v. City of Colo. Springs*, 530 F.Supp.3d 1044, 1066 (D. Colo. 2021) (citing *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007) (emphasis added). The retaliatory motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006) (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway")).

Solely for purposes of the instant Motion to Dismiss, the County does not dispute that Plaintiff has adequately *alleged* he participated in constitutionally protected activity and that he suffered an adverse employment decision. However, Plaintiff has wholly failed to plausibly allege that his termination was substantially motivated by his decision not to endorse Sheriff Garrett in the runoff election.

The Complaint's only allegations even arguably speaking to potential motivations in the underlying employment action culminate in a half-baked comparator theory. The "comparators" Plaintiff identifies are other County employees who were not terminated, yet Plaintiff pleads no facts showing they were similarly situated to him in any material respect. (Doc. No. 1, ¶¶ 38-52). None held the same rank, job title, or core responsibilities as Captain of Investigations, and none occupied a position which the County ultimately *eliminated.* Bare allegations that some of these employees "endorsed Defendant Garrett," or "**likely** supported and/or endorsed Defendant Garrett" (Doc. No. 1, ¶¶ 38-41), and

therefore kept their jobs, are conclusory and cannot sustain a plausible inference of retaliatory motive under *Twombly/Iqbal*. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (threadbare recitals and conclusory statements do not suffice); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).

More fundamentally, Plaintiff concedes the dispositive structural fact: the County eliminated the "Captain of Investigations" position altogether. (Doc. 1, ¶ 28). That concession severs the causal chain he must plausibly allege. Where the challenged adverse action is the *elimination of a position*, not the retention of the position for a favored employee, Plaintiff must plead facts showing the position would have remained *but for* his non-endorsement. *Nieves*, 587 U.S. at 399 (retaliatory motive must be a but-for cause). Plaintiff has not done so. The Complaint alleges no facts suggesting the Captain of Investigations position was essential to agency operations, that the County later re-created a materially identical role for someone else, or that the restructuring was otherwise a sham.

Nor does Plaintiff supply the kind of direct or circumstantial facts from which retaliatory animus can be plausibly inferred. His effort to suggest pretext rests on a mischaracterization of the stated rationale for his termination. Plaintiff concedes he was informed that his position was being eliminated, (Doc. No. 1, ¶ 28), but elsewhere alleges that he was provided "shifting reasons" (Doc No. 1, ¶ 57), and "Defendants hired additional employees in the investigations division to work as investigators" (Doc. No. 1, ¶ 34). But the Complaint itself acknowledges the non-retaliatory, structural explanation—the complete elimination of the Captain of Investigation position—and pleads no facts showing that, but for his non-endorsement, the County would have retained that position. Indeed,

the hiring of additional lower-level investigators reflects a restructuring, and new operational needs following the elimination of the higher-level Captain position. Conclusory "shifting reasons" allegations cannot overcome the more obvious alternative explanation apparent from the pleadings: a restructuring decision to eliminate an underperforming, redundant Captain slot and reassigned investigative reporting lines directly to the Sheriff.

The Complaint's reliance on *Gann v. Cline*, 519 F.3d 1090 (10th Cir. 2008), *Snyder v. City of Moab*, 354 F.3d 1179 (10th Cir. 2003), and *Bass v. Richards*, 308 F.3d 1081 (10th Cir. 2002), (Doc. No. 1, ¶¶ 65, 78), is misplaced. None of those cases involved a structural decision to *eliminate* the plaintiff's job position. *Gann* and *Snyder* turned on the defendants' contention that political affiliation matching the policymaker's was essential to the role, shifting the analysis to whether such partisan loyalty could lawfully be required. *Gann*, 519 F.3d at 1092-96; *Snyder*, 354 F.3d at 1184-87. The analysis applicable to those decisions is a far cry from the analysis applicable to a structural/organizational decision to remove a layer of management. Even so, as will be shown below—if the Court were to analyze the claim under the *Elrod/Branti* or *Pickering/Connick* frameworks invoked in *Gann and Snyder*, the Tenth Circuit's *Jantzen* decision confirms that political alignment may be considered for confidential, command-level roles in a sheriff's office (*see infra* § I(B)). *Bass* is even further afield: there, aside from the fact the court was not dealing with a position-elimination/restructuring, the defendant County *conceded* that political affiliation motivated the adverse action, obviating any dispute over motive. *Bass*, 308 F.3d at 1085. As *Gann* recognizes, showing political affiliation as a "substantial or motivating

9

factor" still will not carry a claim where the employer in turn shows the discharge would have occurred regardless of that affiliation. *Gann*, 519 F.3d at 1093. This rule is fatal on Plaintiff's Complaint: the Captain of Investigations position was eliminated, and Plaintiff offers no facts making it plausible that the position would have remained but for his non-endorsement.

In short, stripped of conclusory assertions, the Complaint alleges: (I) a neutral structural decision to eliminate the Captain of Investigations position; (II) reassignment of investigative functions to other lower-level employees reporting directly to the Sheriff; and, (III) no statements, patterns, departures, or comparator facts tying the County's act of eliminating the position to Plaintiff's non-endorsement of Defendant Garrett for Sheriff. That is not enough to nudge the causation element "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The First Amendment retaliation claim should be dismissed for failure to allege an underlying constitutional violation.

## B. In the alternative, Plaintiff fails to allege an underlying constitutional violation because the Sheriff may lawfully consider political affiliation for the position at issue.

Even if Plaintiff had plausibly alleged that the decision to eliminate his position was substantially motivated by his non-endorsement of Sheriff Garrett, his First Amendment claim still fails.

Public employee First Amendment claims follow two related tracks. Under *Pickering/Connick*, the court balances the employee's interest in speaking (or associating) on a matter of public concern against the government employer's interest in efficiency, discipline, an workplace cohesion; the employer may act on reasonable predictions of

disruption and need not await actual breakdowns. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) ("The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."); *Connick v. Myers*, 461 U.S. 138, 150-52 (1983) ("[W]e do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action."). Separately, the *Elrod/Branti* patronage exception recognizes for confidential or policymaking positions, where political alignment is integral to effective performance, consideration of political affiliation or loyalty does not violate the First Amendment. *Elrod v. Burns*, 427 U.S. 347, 367 (1976); *Branti v. Finkel*, 445 U.S. 507, 518 (1980). Further, "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518. The Tenth Circuit applies both frameworks in the sheriff's-office context. *See Jantzen v. Hawkins*, 188 F.3d 1247, 1257-60 (10th Cir. 1999).

Even if Plaintiff had plausibly alleged that the decision to eliminate his position was substantially motivated by his non-endorsement of Sheriff Garrett, his First Amendment claim still fails because—given the command-level, confidential nature of the Captain of Investigations role—the Sheriff could lawfully consider political alignment under the *Pickering/Connick* balance test and the *Elrod/Branti* patronage exception. In the sheriff's-

11

office context, the Tenth Circuit has recognized that effective law enforcement and internal cohesion can outweigh an employee's partisan speech/association interests where disruption reasonably may be predicted for supervisory or policy-influencing positions. *Jantzen*, 188 F.3d at 1257-58 (deferring to sheriff's specific, experience-based prediction that political opposition within the command staff undermined the office's efficient performance). Further, *Jantzen* expressly endorses the principle that for confidential/policymaking law-enforcement positions, political loyalty can be a lawful qualification. *Id.*

Plaintiff pleads no facts showing that the Captain of Investigations position was anything *but* a high-ranking, supervisory law enforcement role embedded in criminal investigations—i.e., a position requiring trust, coordination, and alignment with the Sheriff's law-enforcement priorities. On these allegations, even assuming Sheriff Garrett and/or the County considered Plaintiff's non-endorsement of Garrett in the determination to eliminate the Captain of Investigation position, the *Pickering/Connick* balance test and the *Elrod/Branti* exception permit that consideration for such a role as a matter of law. *Jantzen*, 188 F.3d at 1257-60. Because the alleged motive, if Plaintiff had plausibly shown it, would still not render the underlying employment decision unconstitutional for a command-level, confidential position, Plaintiff fails to allege an underlying First Amendment violation for this reason, too. Consequently, no *Monell* liability can attach to the County on this alternative ground.

**C. Plaintiff fails to identify a policy or custom of the County by which he was denied a constitutional right.**

Even if Plaintiff had plausibly alleged the existence of a constitutional violation, the Complaint still lacks sufficient allegations to establish a County policy or custom that caused such a violation. As an initial matter—the Complaint plainly does not allege, or even suggest, that the County maintains an official policy of imposing adverse employment actions on employees who do not endorse or politically align with the Sheriff. To establish a County custom, then, Plaintiff must prove a persistent, widespread practice of County officials or employees that is so common and well-settled as to constitute a custom representing County policy. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175 (10th Cir. 2010) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d. 107 (1988)). The County cannot be held liable under § 1983 "solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 397 (1997). However, again, the Complaint plainly does not allege, or even suggest, that a widespread practice of County officials firing their insubordinates for not aligning with their political affiliations exists, let alone one that is so common and well-settled as to constitute a custom representing policy.

Thus, Plaintiff appears to proceed, if at all, on *Bryson's* third avenue—that a County policy or custom may consist of a "decision of an employee with final policymaking authority." *Bryson v. City of Okla City*, 627 F.3d at 788. But, under *McMillian v. Monroe Cnty.*, 520 U.S. 781 (1997), whether an official is a final policymaker for the County is a **function-specific inquiry** grounded in state law. *Id.* at 786. The function at issue here is

13

internal personnel management within the Sheriff's Office.[1] Oklahoma law assigns that employment function to the Sheriff, who "shall be responsible for the official acts of the undersheriff and deputy sheriffs," and may revoke such appointments "at the pleasure of the sheriff." 19 O.S. § 547(A). Accordingly, Sheriff's Office staffing decisions are functions of the Sheriff's Office, not County policy.

Consistent with that framework, Tenth Circuit decisions identifying an Oklahoma sheriff as a "final policymaker" do so in contexts such as jail operations or law-enforcement administration, not County-level employment policy. *See, e.g., Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999); *Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir. 1998); *Burke v. Regalado*, 935 F.3d 960 (10th Cir. 2019). Plaintiff pleads only a personnel action by the Sheriff concerning a Sheriff's-Office position. Because Oklahoma law vests hiring and firing of Sheriff's staff in the Sheriff, that single personnel decision cannot be transmuted into County policy for *Monell* purposes.

The result is the same under the Tenth Circuit's *Randle* test. Final-policymaker status turns on "(1) whether the official is meaningfully constrained 'by policies not of that official's own making;' (2) whether the official's decisions are final—i.e., are they subject to any meaningful review; and, (3) whether the policy decision purportedly made by the

---

[1] For the avoidance of doubt, this Section proceeds in the alternative. The County's immediately preceding argument explains why Plaintiff has not plausibly alleged any underlying First Amendment violation. Moreover, the County does not concede that the Sheriff "fired" Plaintiff; the Complaint itself acknowledges the elimination of Plaintiff's position. Where this Section discusses "termination" or the Sheriff's decisions related to Plaintiff's employment, it does so only to address Plaintiff's theory as pled, and to show, even assuming arguendo an underlying violation, Plaintiff still fails to allege a County policy or custom that caused it.

official is within the realm of the official's grant of authority." *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1996) (citing *City of St. Louis v. Praprotnik*, 486 U.S. 117, 127 (1988). The Complaint alleges no County policy that constrained the Sheriff's personnel decision, and no County review mechanism capable of overruling it. On Plaintiff's own Complaint, the Sheriff's employment call was not County policy under *Randle,* and cannot support *Monell* liability via *Bryson's* third category.

Plaintiff's theory also blurs two distinct governmental acts: (a) the Sheriff's implementation/notice of separation to Plaintiff, purportedly motivated by the Sheriff's own retaliatory animus; and, (b) the County's structural decision to eliminate the Captain of Investigations position. The Complaint itself acknowledges that the position was eliminated. The elimination of a County-funded position, in contradiction to a sheriff's own decision to terminate an employee, is a legislative/fiscal function of County governments under Title 19. Thus, to state a *Monell* claim against the County based on the *elimination* of his position, Plaintiff had to plausibly allege that County final policymakers, such as the Board of County Commissioners, took that structural step because of his protected activity. He does not. Nor does mere post-hoc consistency between the Sheriff's alleged retaliatory animus and the County's structural decision to eliminate the position establish ratification; *Monell* **ratification requires County policymakers to approve both the action and its unconstitutional basis**. *Bryson*, 627 F.3d at 790. The Complaint alleges neither.

In sum—to the extent Plaintiff's *Monell* theory rests on a Sheriff's Office employment decision (as his Complaint suggests), the Board of County Commissioners is

not the proper party as Oklahoma law vests hiring/firing of Sheriff's personnel in the Sheriff, not the Board. The Tenth Circuit has recognized this division and affirmed dismissal of Boards of County Commissioners where Sheriff's Office personnel decisions are at issue. *See Winters v. Bd. of Cnty. Comm'rs of Muskogee Cnty.*, 633 Fed.Appx. 684, 690 (10th Cir. 2015) ("[T]he Board is not [the] employer" of Plaintiff, former deputy sheriff of the defendant county, because "[u]nder Oklahoma law [...] [t]he Board has no authority or control over the Sheriff's employees."); *cf. Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1215 (10th Cir. 2002) (under analogous state law, board lacked authority over sheriff's employees and was not their employer). This clarification does not conflict with the County's distinct point above: if Plaintiff instead targets the County's structural decision to eliminate the position, that is a legislative/fiscal act requiring plausible allegations that County final policymakers adopted the abolition because of Plaintiff's protected activity—which the Complaint does not supply.

Effectively, Plaintiff pleads no unconstitutional County policy or custom, and under Oklahoma law, it is the independently-elected Sheriff, not the Board of County Commissioners, who controls Sheriff's Office staffing. Thus, any Sheriff personnel decision is not County policy. The only County act alleged—the structural elimination of the Captain position—requires plausible allegations showing County policymakers acted because of Plaintiff's protected activity; none are pled, therefore, the *Monell* claim fails.

## II. PLAINTIFF FAILS TO STATE A CLAIM OF ADEA DISCRIMINATION UPON WHICH RELIEF MAY BE GRANTED.

In order for Plaintiff to state a claim of discrimination in violation of the Age Discrimination in Employment Act, he must show that: "(1) he is within the protected age

group; (2) he was doing satisfactory work; (3) he was discharged; and, (4) his position was filled by a younger person." *Rivera v. City and Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004). Because Plaintiff's Complaint concedes his position was eliminated (Doc. No. 1, ¶ 28), the usual fourth element does not apply; instead, the Tenth Circuit applies a reduction-in-force ("RIF") framework, which substitutes the fourth element to require "some evidence the employer intended to discriminate […] in reaching its RIF decision." *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998).

Solely for the purposes of the instant Motion to Dismiss, the County does not contest that Plaintiff has adequately *alleged* the first three elements. However, the Complaint plainly does not allege that the County held some age-discriminatory animus in eliminating the Captain of Investigation position. The ADEA claim is haphazardly thrown into the Complaint, seemingly in an effort to bolster Plaintiff's chances at relief – the only allegations even remotely implicating ADEA considerations are that "[o]n information and belief, Tyler Ogdon and J.D. English […]" (just two of the five purported comparators Plaintiff identifies) "[…] are substantially younger than Plaintiff[,]" (Doc No. 1, ¶ 37), and that "Defendants[] terminated Plaintiff because of his age[,]" (Doc No. 1, ¶ 62). The strictly-conclusory nature of those two allegations aside, the Complaint contains no allegations of prior age-based comments, age-skewed selection criteria, statistical disparities—nothing. Plaintiff does not even venture to provide the ages, or even estimations of the ages, of Tyler Ogdon and J.D. English.

Plaintiff's allegations related to new employees in the investigations division (Doc. No. 1, ¶¶ 33-37) do not salvage the claim. Even crediting Plaintiff's allegation that the

17

investigations division later added personnel, the Complaint identifies no younger replacement into the eliminated Captain position; rather, it concedes duties were redistributed, and Plaintiff "could have filled one of the **new** investigator positions[,]" (Doc. No. 1, ¶ 36), a different, lower-level role. Because the Tenth Circuit treats such scenarios as RIF/redistribution cases, Plaintiff must plausibly allege facts supporting an inference of age bias in the decision to eliminate the Captain's position. *Beaird*, 145 F.3d at 1165. Plaintiff's vague assertion that two of the five "new investigators" he identified are, "[o]n information and belief […] substantially younger than Plaintiff[,]" without ages or any other context, is too conclusory to nudge intent across the plausibility line. Moreover, in RIF scenarios, an employer has no duty transfer an employee into another job position. *See Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996); *see also Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1193–94 (10th Cir. 2006).

In a RIF case, a plaintiff can demonstrate pretext in three principal ways, by showing: "(1) his own termination does not accord with the RIF criteria, (2) Defendant's RIF criteria were deliberately falsified or manipulated in order to terminate him, or (3) that the RIF generally was pretextual." *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1193-94 (10th Cir. 2006) (overruled on other grounds) (citing *Beaird*, 145 F.3d at 1168). The Complaint makes no mention of the County's RIF criteria, but does allege that "Defendants' stated reasoning for termination is pretextual." (Doc. No. 1, ¶ 32). As such, the Complaint is analyzed under the third approach. "This third approach is sometimes satisfied by a showing that the defendant actively sought to replace a number of RIF-terminated employees with new hires during the RIF general time frame." *Id.* (citing

*Beaird*, 145 F.3d at 1168). Further, "[i]n a typical non-RIF context, we have also said a showing of pretext can look to 'prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating [...] criteria); and the use of subjective criteria.'" *Id.* (citing *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002).

Plaintiff alleges none of this. He does not allege contemporaneous hiring into the eliminated Captain position, re-creation of that role for a younger worker, prior age-based remarks by decision makers, age-skewed selection factors, statistical disparities, procedural irregularities, or the use of subjective criteria to target older employees. Because the Complaint pleads a position-elimination/restructuring and offers no well-pled allegations that age was the but-for cause of that decision, Plaintiff fails to state an ADEA claim upon which relief may be granted.

## CONCLUSION

Plaintiff fails to state a claim for First Amendment Retaliation against the County, as he has failed to plausibly allege the existence of an underlying constitutional violation, because he failed to show the decision to eliminate the Captain of Investigations position was "substantially motivated" as retaliation for his exercise of protected activity under the First Amendment. Alternatively, Plaintiff failed to plausibly allege the existence of an underlying constitutional violation as, even if the decision to eliminate the Captain position was substantially motivated by Plaintiff's political activity/affiliation, the position is one for which decision makers may lawfully consider political affiliation. Moreover, Plaintiff fails to identify a policy or custom of the County by which he was purportedly denied a

19

constitutional right, as he identifies no formal policy statement or custom of the County's, and fails to allege that the employment decision was made by a County final policymaker or ratified by one. Finally, Plaintiff fails to state a claim against the County under the ADEA upon which relief may be granted, as he wholly failed to plausibly allege that the decision to eliminate the Captain position was motivated by any sort of age-discriminatory pretext.

WHEREFORE, premises considered, Defendant Board of County Commissioners of Lincoln County respectfully requests the Court grant this Motion and dismiss Plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. The County further requests an award of reasonable costs and attorneys' fees incurred in the defense of this action, as well as any further relief this Court deems just and proper.

Respectfully submitted,

 s/ Jessica L. Dark
Robert S. Lafferrandre, OBA No. 11897
Jessica L. Dark, OBA No. 31236
W. Riley Nester, OBA No. 36222
PIERCE COUCH HENDRICKSON
 BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
rlafferrandre@piercecouch.com
jdark@piercecouch.com
rnester@piercecouch.com
*Attorneys for Defendants Board of County Commissioners of Lincoln County, and Sheriff Kevin Garrett*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of October, 2025, I electronically transmitted the attached document to the Clerk of Court via the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to all parties that have filed an Entry of Appearance in this matter.

Christopher C. Lind      christopher@drewnicholslaw.com
Hung-Lin Lai          jimmy@laiturnerlaw.com
Isaac Z. Treadway       isaac@lindtreadaway.com
Shade Kremer         shade@laiturnerlaw.com


 s/ Jessica L. Dark
Jessica L. Dark