IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LARRY STOVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CV-25-1017-HE |
| | ) | |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF LINCOLN | ) | |
| COUNTY, OKLAHOMA, and | ) | |
| KEVIN GARRETT, as an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO DISMISS OF DEFENDANT SHERIFF KEVIN GARRETT

Defendant Sheriff Kevin Garrett, in his individual capacity ("Sheriff Garrett"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby submits the following Motion to Dismiss Plaintiff's Complaint (Doc. No. 1) for failure to state a claim upon which relief may be granted. In support thereof, Sheriff Garrett submits the following brief in support:

## INTRODUCTION

This case arises out of Plaintiff Larry Stover's employment and separation from the Lincoln County Sheriff's Department. (Doc. No. 1, ¶ 9). Per the Complaint, Plaintiff served as the Captain of Investigations from 2017, to January 2, 2025. (Doc. No. 1, ¶ 11). Both Plaintiff and Sheriff Garrett, *inter alia,* ran in the Republican Primary for the 2024 Lincoln County Sheriff's election. (Doc. No. 1, ¶¶ 17). The Republican Primary required a runoff election; Sheriff Garrett was a candidate and Plaintiff was not. (Doc. No. 1, ¶ 19). Plaintiff alleges that Sheriff Garrett contacted him and requested that he endorse Defendant Garrett

in the runoff election and Plaintiff declined. (Doc. No. 1, ¶¶ 20-21). Defendant Garrett won the election. On January 2, 2025, Plaintiff was called into a meeting with Sheriff Garrett, Ted Woodhead, and Melanie McFee. (Doc. No. 1, ¶¶ 24-25). In that meeting, "Defendant Garrett informed Plaintiff that Plaintiff's position of Captain of Investigation[s] was being eliminated." (Doc. No. 1, ¶ 28). Plaintiff was given a termination letter, which provided that "[d]ue to restructuring in the Lincoln County Sheriff's Office we are eliminating your position." (Doc. No. 1, ¶ 31). The Captain of Investigations position's responsibilities were re-distributed among other Investigations employees in different roles. (Doc. No. 1, ¶¶ 34-36). Plaintiff alleges that two of the five individuals he identified as now being "employed to work in investigations[,]" (Doc. No. 1, ¶ 35), "are substantially younger than Plaintiff." (Doc. No. 1, ¶ 37).

Based on the foregoing, Plaintiff brings a claim against Sheriff Garrett alleging retaliation in violation of his First Amendment rights to protected speech and political affiliation. (Doc. No. 1, ¶¶ 63-83). However, the Complaint does not state a claim against Sheriff Garrett, as Plaintiff fails to plausibly allege an underlying constitutional violation and fails to show that the constitutional right he alleges was violated was clearly established at the time of its violation. Accordingly, all claims against Defendant Garrett should be dismissed as a matter of law.

## STANDARD OF REVIEW

The *Twombly/Iqbal* pleading standard is well-known by this Court. A complaint must present a facially plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The quality of these factual allegations must create more than speculation

about the plaintiff's chances of recovery. *Id*. The United States Supreme Court has further held that, while the pleading standard of Fed. R. Civ. P. 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). If the complaint contains only boilerplate labels and conclusory allegations, dismissal is proper because "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Escobar v. Mora*, 496 Fed. App'x. 806, 816 (10th Cir. 2012) (citing *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009)). "An allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement. Conclusory allegations are **not entitled to the assumption of truth.**" *Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1233 (10th Cir. 2022) (citing *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)) (emphasis added).

As discussed herein and as evidenced from the face of the pleading, Plaintiff's Complaint fails to meet the standards of pleading required under *Twombly* and *Iqbal,* as it lacks the specific factual allegations necessary to support a plausible claim for relief against Defendant Garrett in his individual capacity.

## ARGUMENTS AND AUTHORITIES

### I.     SHERIFF GARRETT IS ENTITLED TO QUALIFIED IMMUNITY.

As an initial matter, Plaintiff effectively pleads his First Amendment theory twice— once as a retaliation for "engag[ing] in protected activity by informing Defendant Garrett

3

that Plaintiff would not endorse him[,]" (Doc. No. 1, ¶ 64), and again as a retaliation for Plaintiff's "refusal to endorse Defendant Garrett in the 2024 Lincoln County Sheriff's race[,]" (Doc. No. 1, ¶ 77). These are not distinct claims. Both rest on the same nucleus of facts, invoke the same legal elements for public-employee retaliation, and cite identical "clearly established" authority. (*see* Doc. No. 1, ¶¶ 65, 78). Whether framed as the act (non-endorsement) or the communication of that act (informing Sheriff Garrett), the analysis is the same: Plaintiff must plausibly allege he engaged in protected activity, he suffered an adverse employment action, and that the action was substantially motivated by the activity (with but-for causation). *See infra.* Accordingly, the arguments below address and seek dismissal of both iterations.

The Court is no doubt aware of qualified immunity's principles. The affirmative defense of qualified immunity "creates a presumption that [the defendant is] immune from suit." *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (quoting *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016)) (alteration in original). To overcome the qualified immunity defense as to Sheriff Garrett, Plaintiff must show: (1) Sheriff Garrett violated Plaintiff's constitutional or statutory rights; and, (2) the right was clearly established at the time of Sheriff Garrett's conduct. *Arnold v. City of Olathe,* 35 F.4th 778, 788 (10th Cir. 2022); *Andersen v. DelCore*, 2023 WL 5313974, at *4 (10th Cir. Aug. 18, 2023). The Plaintiff bears the "heavy burden" of satisfying both parts of this test. *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017).

A right is clearly established for qualified immunity purposes if "every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*,

577 U.S. 7, 11–12 (2015) (citing *Reichle v. Howards*, 556 U.S. 658 (2012)). The party opposing qualified immunity need not identify "a case *directly* on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (emphasis added). Qualified immunity is a powerful imposition, protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### A. Plaintiff fails to show a constitutional violation.

The Complaint alleges that Sheriff Garrett retaliated against Plaintiff for engaging in the protected activity of not endorsing him in the 2024 Lincoln County Sheriff's runoff election. (Doc. No. 1, ¶ 69). In order for Plaintiff to establish a First Amendment retaliation claim, he must demonstrate:

> (1) that he was engaged in a constitutionally protected activity; (2) that the defendant's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and, (3) that the defendant's action was **substantially motivated** as a response to his exercise of his First Amendment speech rights.

*Sexton v. City of Colo. Springs*, 530 F.Supp.3d 1044, 1066 (D. Colo. 2021) (citing *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007) (emphasis added). The retaliatory motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006) (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway")).

5

Solely for purposes of the instant Motion to Dismiss, Sheriff Garrett does not dispute that Plaintiff has adequately *alleged* that he was participating in constitutionally protected activity and that he suffered an adverse employment decision. However, Plaintiff has wholly failed to state any fact to show it is plausible that the termination was substantially motivated by his decision not to endorse Sheriff Garrett.

The Complaint's only allegations even arguably speaking to Sheriff Garrett's motivations in the underlying employment action culminate in a half-baked comparator theory. The "comparators" Plaintiff identifies are other County employees who were not terminated, yet Plaintiff pleads no facts showing they were similarly situated to him in any material respect. (Doc. No. 1, ¶¶ 38-52). None held the same rank, job title, or core responsibilities as Captain of Investigations, and none occupied a position which the County ultimately *eliminated.* Bare allegations that some of these employees "endorsed Defendant Garrett," or "**likely** supported and/or endorsed Defendant Garrett," (Doc. No. 1, ¶¶ 38-41), and therefore kept their jobs, are conclusory and cannot sustain a plausible inference of retaliatory motive under *Twombly/Iqbal*. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (threadbare recitals and conclusory statements do not suffice); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).

More fundamentally, Plaintiff concedes the dispositive structural fact: the County eliminated the "Captain of Investigations" position altogether. (Doc. 1, ¶ 28). That concession severs the causal chain he must plausibly allege. Where the challenged adverse action is the *elimination of a position*, not the retention of the position for a favored employee, Plaintiff must plead facts showing the position would have remained *but for* his

non-endorsement. *Nieves*, 587 U.S. at 399 (retaliatory motive must be a but-for cause). Plaintiff has not done so. The Complaint alleges no facts suggesting the Captain of Investigations position was essential to agency operations, that the County later re-created a materially identical role for someone else, or that the restructuring was otherwise a sham.

Nor does Plaintiff supply the kind of direct or circumstantial facts from which retaliatory animus can be plausibly inferred. His effort to suggest pretext rests on a mischaracterization of the stated rationale for his termination. Plaintiff concedes he was informed that his position was being eliminated (Doc. No. 1, ¶ 28), but elsewhere alleges that he was provided "shifting reasons" (Doc No. 1, ¶ 57), and "Defendants hired additional employees in the investigations division to work as investigators," (Doc. No. 1, ¶ 34). But the Complaint itself acknowledges the non-retaliatory, structural explanation—the elimination of the Captain of Investigation position—and pleads no facts showing that, but for his non-endorsement, the County would have retained that position. Indeed, the hiring of additional lower-level investigators reflects a restructuring, and new operational needs, following elimination of the higher-ranking Captain position. Conclusory "shifting reasons" allegations cannot overcome the more obvious alternative explanation apparent from the pleadings: a restructuring decision to eliminate an underperforming, redundant Captain slot, and reassigned investigative reporting lines directly to the Sheriff.

The Complaint's reliance on *Gann v. Cline*, 519 F.3d 1090 (10th Cir. 2008), *Snyder v. City of Moab*, 354 F.3d 1179 (10th Cir. 2003), and *Bass v. Richards*, 308 F.3d 1081 (10th Cir. 2002), (Doc. No. 1, ¶¶ 65, 78), is misplaced. None of those cases involved a structural decision to *eliminate* the plaintiff's job position. *Gann* and *Snyder* turned on the

defendants' contention that political affiliation matching the policymaker's was essential to the role, shifting the analysis to whether such partisan loyalty could lawfully be required. *Gann*, 519 F.3d at 1092-96; *Snyder*, 354 F.3d at 1184-87. The analysis applicable to those decisions is a far cry from the analysis applicable to a structural/organizational decision to remove a layer of management. Even so, as will be shown below—if the Court were to analyze the claim under the *Elrod/Branti* or *Pickering/Connick* frameworks invoked in *Gann and Snyder*, the Tenth Circuit's *Jantzen* decision confirms that political alignment may be considered for confidential, command-level roles in a sheriff's office (*see infra* § I(B)). *Bass* is even further afield: there, aside from the fact the court was not dealing with a position-elimination/restructuring, the defendant County *conceded* that political affiliation motivated the adverse action, obviating any dispute over motive. *Bass*, 308 F.3d at 1085. As *Gann* recognizes, showing political affiliation as a "substantial or motivating factor" still will not carry a claim where the employer in turn shows the discharge would have occurred regardless of that affiliation. *Gann*, 519 F.3d at 1093. This rule is fatal on Plaintiff's Complaint: the Captain of Investigations position was eliminated, and Plaintiff offers no facts making it plausible that the position would have remained but for his non-endorsement.

In short, stripped of conclusory assertions, the Complaint alleges: (I) a neutral structural decision to eliminate the Captain of Investigations position, (II) reassignment of investigative functions to other lower level employees reporting directly to the Sheriff; and, (III) no statements, patterns, departures, or comparator facts tying the County's act of eliminating the position to Plaintiff's non-endorsement of Defendant Garrett for Sheriff.

8

That is not enough to nudge the causation element "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Sheriff Garrett is entitled to qualified immunity because Plaintiff has failed to plausibly show that his constitutional rights were violated.

**B. In the alternative, Plaintiff fails to allege an underlying constitutional violation because Sheriff Garrett may lawfully consider political affiliation for the position at issue.**

Even if Plaintiff had plausibly alleged that the decision to eliminate his position was substantially motivated by his non-endorsement of Sheriff Garrett, his First Amendment claim still fails.

Public employee First Amendment claims follow two related tracks. Under *Pickering/Connick*, the court balances the employee's interest in speaking (or associating) on a matter of public concern against the government employer's interest in efficiency, discipline, an workplace cohesion; the employer may act on reasonable predictions of disruption and need not await actual breakdowns. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) ("The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."); *Connick v. Myers*, 461 U.S. 138, 150-52 (1983) ("[W]e do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action."). Separately, the *Elrod/Branti* patronage exception recognizes that for confidential or policymaking positions, where political alignment is integral to effective performance, consideration of political affiliation or loyalty does not violate the First Amendment. *Elrod*

9

*v. Burns*, 427 U.S. 347, 367 (1976); *Branti v. Finkel*, 445 U.S. 507, 518 (1980). Further, "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518. The Tenth Circuit applies both frameworks in the sheriff's-office context. *See Jantzen v. Hawkins*, 188 F.3d 1247, 1257-60 (10th Cir. 1999).

Even if Plaintiff had plausibly alleged that the decision to eliminate his position was substantially motivated by his non-endorsement of Sheriff Garrett, his First Amendment claim still fails because—given the command-level, confidential nature of the Captain of Investigations role—Sheriff Garrett could lawfully consider political alignment under the *Pickering/Connick* balance test and the *Elrod/Branti* patronage exception. In the sheriff's-office context, the Tenth Circuit has recognized that effective law enforcement and internal cohesion can outweigh an employee's partisan speech/association interests where disruption reasonably may be predicted for supervisory or policy-influencing positions. *Jantzen*, 188 F.3d at 1257-58 (deferring to sheriff's specific, experience-based prediction that political opposition within the command staff undermined the office's efficient performance). Further, *Jantzen* expressly endorses the principle that for confidential/policymaking law-enforcement positions, political loyalty can be a lawful qualification. *Id.*

Plaintiff pleads no facts showing that the Captain of Investigations position was anything *but* a high-ranking, supervisory law enforcement role embedded in criminal

10

investigations—i.e., a position requiring trust, coordination, and alignment with the Sheriff's law-enforcement priorities. On these allegations, even assuming Sheriff Garrett and/or the County considered Plaintiff's non-endorsement of Garrett in the determination to eliminate the Captain of Investigation position, the *Pickering/Connick* balance test and the *Elrod/Branti* exception permit that consideration for such a role as a matter of law. *Jantzen*, 188 F.3d at 1257-60. Because the alleged motive, if Plaintiff had plausibly shown it, would still not render the underlying employment decision unconstitutional for a command-level, confidential position, Plaintiff fails to allege an underlying First Amendment violation for this reason, too.

C. **Plaintiff fails to show a clearly established right was violated.**

The party opposing qualified immunity requires fact-specific clearly established law; "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (courts must not define the right "at a high level of generality").

Plaintiff identifies no Supreme Court or Tenth Circuit case that clearly established that a sheriff violates the First Amendment by separating a captain-level law enforcement position who declined to endorse him—particularly where the Complaint itself acknowledges a position elimination/restructuring. To the contrary, Tenth Circuit authority recognize, for confidential/policymaking law-enforcement roles, political alignment may be a lawful consideration under *Elrod/Branti*, and a sheriff may act on reasonable predictions of disruption under *Pickering/Connick*. *Jantzen v. Hawkins*, 188 F.3d 1247, 1257–60 (10th Cir. 1999); *Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1272–73

(10th Cir. 1998). At best, the law in this context is unsettled, which is fatal to the clearly-established prong.

Nor do Plaintiff's cited cases (*Gann*, *Snyder*, or *Bass* – (Doc. No. 1, ¶¶ 65, 78)) clearly establish a right based on these facts. None involved a command-level investigations captain, none involved the elimination of the position, and *Jantzen* cuts the other way for confidential, supervisory roles. On the Complaint, by no means would "every reasonable official" have understood that Sheriff Garrett's actions violated the First Amendment. *Mullenix*, 577 U.S. at 12.

Because Plaintiff fails to allege a constitutional violation, and fails to identify clearly established law prohibiting Sheriff Garrett's alleged conduct, Sheriff Garrett is entitled to qualified immunity and all claims against him should be dismissed.

## **CONCLUSION**

The Complaint's allegations fail to overcome the affirmative defense of qualified immunity. Plaintiff failed to plausibly allege the existence of an underlying constitutional violation, as he failed to show the decision to eliminate the Captain of Investigations position was "substantially motivated" as retaliation for his exercise of protected activity under the First Amendment. Alternatively, Plaintiff failed to plausibly allege the existence of an underlying constitutional violation as, even if the decision to eliminate the Captain position was substantially motivated by Plaintiff's political activity/affiliation, the position is one for which decision makers may lawfully consider political affiliation. Moreover, Plaintiff fails to plausibly allege that a clearly established right was violated, as he supplied no case law or other authority demonstrating that a sheriff violates the First Amendment

by separating a captain-level law enforcement position who declined to endorse him, particularly where the Complaint itself acknowledges a position elimination/restructuring.

WHEREFORE, premises considered, Defendant Sheriff Garrett respectfully requests the Court grant this Motion and dismiss Plaintiff's claims against him pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Sheriff Garrett further requests an award of reasonable costs and attorneys' fees incurred in the defense of this action, as well as any further relief this Court deems just and proper.

Respectfully submitted,

 s/ Jessica L. Dark
Robert S. Lafferrandre, OBA No. 11897
Jessica L. Dark, OBA No. 31236
W. Riley Nester, OBA No. 36222
PIERCE COUCH HENDRICKSON
 BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
rlafferrandre@piercecouch.com
jdark@piercecouch.com
rnester@piercecouch.com
***Attorneys for Defendants Board of County Commissioners of Lincoln County, and Sheriff Kevin Garrett***

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of October, 2025, I electronically transmitted the attached document to the Clerk of Court via the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to all parties that have filed an Entry of Appearance in this matter:

| | |
|---|---|
| Christopher C. Lind | christopher@drewnicholslaw.com |
| Hung-Lin Lai | jimmy@laiturnerlaw.com |
| Isaac Z. Treadway | isaac@lindtreadaway.com |
| Shade Kremer | shade@laiturnerlaw.com |

                                            s/ Jessica L. Dark
                                            Jessica L. Dark